UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY SIMEON HALL,

    Plaintiff,

v.                                                                              Case No. 12-12064
                                                                            Hon. Lawrence P. Zatkoff

ANN McCARTY et al.,

    Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 14, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

Plaintiff filed his second[1] *pro se* Complaint in state court against Defendants, who number approximately twenty-nine, asserting violations of his civil rights and numerous state laws. Plaintiff's Complaint seeks damages in excess of $200 million. Defendants Ann McCarty ("McCarty"), Jack Simms ("Simms"), William Paul Nichols ("Nichols"), Michael Weipert ("Weipert"),[2] Judge Terrence Bronson ("Bronson"), Judge Michael Labeau ("Labeau"), and County of Monroe timely removed the case to federal court based on federal-question jurisdiction. The Court construes the complaint as alleging claims arising under 42 U.S.C. § 1983 and state law.

---

[1] Plaintiff filed a strikingly similar complaint in state court in April 2009 against many of the same Defendants here. That complaint was removed to this Court on May 4, 2009. Plaintiff's complaint was ultimately dismissed by the Court, as discussed within this Opinion and Order.
[2] Defendant Weipert is currently a state-court judge, but Plaintiff's allegations refer to Weipert's prior role as a prosecuting attorney.

Thereafter, Defendants McCarty, Simms, Nichols, Weipert, Bronson, Labeau, and County of Monroe filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [dkt 5]. Defendants Daniel Heyns ("Heyns") and Barbara Sampson ("Sampson") also filed a motion to dismiss [dkt 16]. Plaintiff has filed largely unintelligible documents [dkts 9, 11, and 22] that the Court construes as responsive to Defendants' motions.

The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Defendants' motions to dismiss are GRANTED.

## II. BACKGROUND

The facts surrounding this case were detailed by the Court as follows in its February 5, 2010, Opinion and Order dismissing Plaintiff's previous lawsuit:

> Plaintiff was arrested on October 25, 2003, while at his sister's residence in Monroe, Michigan. Plaintiff was convicted of multiple state-law criminal violations on September 22, 2004, and was sentenced on November 1, 2004.
>
> At some point in November 2004, Plaintiff became aware of an alleged error in his criminal history. Plaintiff maintains that a prior conviction under Mich. Comp. Laws § 750.479a for resisting arrest appeared as a violation of Mich. Comp. Laws § 750.479b for attempting to disarm a police officer. Plaintiff contends that the error appeared on his "Parole Guidelines Scoresheet", which Plaintiff believes is the reason that he was denied early parole in March 2007.
>
> Plaintiff insists that he informed his sentencing judge, Defendant LaBeau, of the discrepancy, who allegedly assured Plaintiff that the error was that of the court. Plaintiff . . . attached an October 25, 2007, signed order from Defendant LaBeau instructing the Michigan Department of Corrections to correct the

> error. Plaintiff maintains that the error has not been rectified and that his record interferes with employment opportunities.

*Hall v. Tolstedt*, No. 09-11694, 2010 WL 481390, *1 (E.D. Mich. Feb. 5, 2010).

As stated by the Court in its February 5, 2010, Opinion and Order, Plaintiff previously challenged the validity of his arrest, the validity of his conviction, and the uncorrected criminal history error that allegedly caused his denial of parole. *Id.* The Court ultimately dismissed Plaintiff's claims as suffering from at least four deficiencies: (1) the statute of limitations on Plaintiff's constitutional claims regarding his arrest had expired and such claims were therefore barred; (2) the *Heck* Doctrine barred a challenge to the validity of Plaintiff's state-court conviction; (3) as no federally-protected interest in parole exists in Michigan, Plaintiff could not state a cognizable due process violation under 42 U.S.C. § 1983, even if the parole board relied on inaccurate criminal history information; and (4) the served defendants consisted of state-court judges, state prosecutors, a parole officer, and a probation officer, all of which were entitled to absolute immunity. *Id.* at *2–3.

In a related Order dated June 14, 2010, the Court dismissed Plaintiff's claims against all of the unserved defendants due to Plaintiff's failure to timely effectuate service. That Order resolved all the outstanding claims and closed Plaintiff's case. *Hall v. Tolstedt*, No. 09-11694, 2010 WL 2428652, *1 (E.D. Mich. June 14, 2010).

Plaintiff now brings the instant Complaint against Defendants—many of which were named in the previous lawsuit—based on the identical set of facts and similarly alleges § 1983 claims. In addition, Plaintiff asserts violations of Michigan tort law.

### III. STANDARD OF REVIEW

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

The Court recognizes that when a plaintiff proceeds *pro se*, as is the case here, the Court must construe that plaintiff's pleadings liberally and that such pleadings are held to a lesser standard than those drafted by a licensed attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). The Court, however, will not re-write a deficient complaint or otherwise serve as counsel for that plaintiff. *See GJR Invs, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## IV. ANALYSIS

Though Plaintiff's instant Complaint attempts—albeit incoherently—to place a different twist on the facts mentioned above, Plaintiff fails in that regard and again focuses the majority of his allegations on his arrest,[3] conviction, and parole hearing.[4] For the reasons that follow, the Court dismisses Plaintiff's claims.

### A. RES JUDICATA

Defendants McCarty, Simms, Nichols, Weipert, and Labeau were all named, *and served*, defendants in Plaintiff's previous action. *See Hall*, 2010 WL 2428652. As such, because the Court dismissed that case on the merits, the doctrine of res judicata bars the Court from entertaining Plaintiff's claims against these Defendants now.

The doctrine of res judicata "provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). For res judicata to apply, the following elements must be present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

---

[3] As was alleged in his prior complaint, Plaintiff's instant Complaint alleges that he was falsely arrested, falsely imprisoned, and subjected to excessive force.

[4] The Court summarily dismisses Plaintiff's attack on his conviction and parole hearing. As was clearly ruled on in his previous case, the *Heck* doctrine bars a challenge to his state-court conviction and there is no federally-protected interest in parole hearings under Michigan law. *See Hall*, 2010 WL 481390. Thus, when the Court refers to Plaintiff's § 1983 claims or his alleged constitutional violations throughout the remainder of this Opinion and Order, the Court is referring to Plaintiff's challenge to his arrest.

*Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

It is beyond dispute that all four elements are met here. First, the Court's February 5, 2010, Opinion and Order dismissing Plaintiff's prior complaint constituted a final decision on the merits by a court of competent jurisdiction. *See* Fed. R. Civ. P. 41(b) ("Unless [a] dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."). Second, the current action involves the same parties—Plaintiff and Defendants McCarty, Simms, Nichols, Weipert, and Labeau.

Third, the present action raises issues which were, or could have been, asserted in Plaintiff's prior action. Plaintiff's prior complaint challenged that his arrest, conviction, and deficient parole hearing amounted to an abridgement on his constitutional rights. Plaintiff's instant Complaint replicates the § 1983 claims from his prior suit. The only additional claims now alleged are violations of Michigan tort law. The doctrine of res judicata prohibits not only re-litigation of all claims or issues which were actually litigated, but also those which could have been litigated in a prior action. *See Gargallo v. Merrill Lynch, Pierce, Finner & Smith, Inc.*, 918 F.2d 658, 660–61 (6th Cir. 1990). The tort claims arose out of the same set of facts that prompted Plaintiff to file his prior complaint. These claims therefore could and should have been litigated in his prior suit.

Lastly, the identical civil rights violations alleged in Plaintiff's prior complaint are being alleged in the present case. Thus, the fourth requirement of res judicata is satisfied.

Thus, to the extent Plaintiff is alleging constitutional violations under § 1983 and violations of Michigan tort law against Defendants McCarty, Simms, Nichols, Weipert, and Labeau, these claims are barred by res judicata and must be dismissed.

**B. DEFENDANT BRONSON**

**i. ABSOLUTE JUDICIAL IMMUNITY**

As one of the grounds for seeking dismissal of the claims against him, Defendant Bronson—a state-court judge—argues that he is entitled to absolute judicial immunity. The Court agrees.

The Sixth Circuit has described the immunity from § 1983 actions[5] enjoyed by judges as follows:

> "[J]udges of courts of superior or general jurisdiction are not liable to civil action for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872). This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights. *See Pierson v. Ray*, 386 U.S. 547, 554–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court explained: "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication . . . . Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 226–27, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

---

[5] Michigan's doctrine of judicial immunity from state-law tort actions for money damages parallels the federal doctrine applicable to § 1983 suits. *See Ross v. Consumers Power Co.*, 420 Mich. 567, 633 (1984); Mich. Comp. Laws § 691.1407(5). Accordingly, this discussion of federal law applies with equal force to Plaintiff's state-law claims and similarly bars such claims.

> Because "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches," *id.* at 227, 108 S.Ct. 538, judicial immunity has its limits, in the form of two exceptions. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (citations omitted).

*Stern v. Mascio*, 262 F.3d 600, 606–07 (footnote omitted).

Based on firm precedent, Defendant Bronson wears a cloak of judicial immunity with respect to Plaintiff's claims against him, and nothing from Plaintiff's Complaint seriously contends otherwise. First, it is clear that Defendant Bronson was acting in his judicial capacity when he took the actions complained of by Plaintiff. In fact, Plaintiff's main attack of Defendant Bronson challenges the sentence he imposed stemming from Plaintiff's arrest in 2003. Issuing a sentence from the bench certainly falls within the scope of judicial action. Second, Plaintiff's allegations fail to establish that Defendant Bronson acted in the "complete absence of all jurisdiction" or, for that matter, address this issue at all. Plaintiff's cursory allegations do not overcome the presumption of judicial immunity afforded to Defendant Bronson. The Court therefore dismisses all of Plaintiff's claims—federal and state—against Defendant Bronson.

## C. DEFENDANTS DANIEL HEYNS AND BARBARA SAMPSON

In his Complaint, Plaintiff also named Heyns, the Michigan Department of Corrections ("MDOC") Director, and Sampson, MDOC Parole Board Member, as Defendants. Though not artfully pled, it appears Plaintiff is suing Defendants Heyns and Sampson pursuant to § 1983 in

their official and individual capacities. Plaintiff also asserts state-law tort claims[6] against Defendants Heyns and Sampson.

### i. OFFICIAL CAPACITIES

States and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 35 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

By bringing a suit against individuals—here, Defendants Heyns and Sampson—in their official capacities, Plaintiff has effectively brought the equivalent of a suit against a state entity—in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The Sixth Circuit has specifically held in numerous unpublished opinions that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Accordingly, to the extent the Court views Plaintiff's § 1983 claims as against Defendant Heyns and Sampson in their official capacities, these claims must fail based on Eleventh Amendment immunity.

---

[6] Plaintiff's Complaint includes the following tort counts: intentional infliction of emotional distress; gross negligence; defamation; and "violation of ministerial duties". Of these torts, the counts captioned "gross negligence" and "violation of ministerial duties" mirror the allegations Plaintiff utilizes to support his § 1983 claims. As such, the Court does not view these two counts as separate torts, but rather considers them part of his § 1983 claims.

9

**ii. INDIVIDUAL CAPACITIES**

Plaintiff's desire to hold Defendants Heyns and Sampson individually liable for violating his constitutional rights similarly lacks merit. As discussed below, the Court first dismisses Plaintiff's § 1983 claims against Defendant Heyns for failing to state a claim upon which relief could be granted. Next, the Court finds that absolute immunity shields Defendant Sampson from liability.

To state a claim under § 1983 against an individual, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Aside from identifying Defendant Heyns one time in paragraph 3 of his Complaint, Plaintiff fails to specifically mention Defendant Heyns when pleading the allegations regarding his alleged constitutional violations. It is a fundamental precept of pleading that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *see also* Fed. R. Civ. P. 8. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal notwithstanding the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where the plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764

(6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Because Plaintiff's allegations utterly fail to demonstrate how, exactly, Defendant Heyns violated his constitutional rights, the Court considers Plaintiff's Complaint fatally defective and dismisses his § 1983 claims against Defendant Heyns pursuant to Fed. R. Civ. P. 8.

Plaintiff's § 1983 claims against Defendant Sampson are also foreclosed. Parole board members, like Defendant Sampson, are afforded absolute immunity from liability for their conduct in individual parole decisions when they are exercising their decision-making powers and/or making recommendations concerning parole. *See Horton v. Martin*, 137 Fed. App'x 773, 775 (2005) (citing to Second, Fifth, and Eight Circuit cases standing for that edict). Insofar as Plaintiff alleges that Defendant Sampson "relied [or] used erroneous information" during the parole hearing and that her actions amount to a violation of his constitutional rights, such claims involve Defendant Sampson's "decision-making powers" or parole "recommendations" and therefore fail as a matter of law.

### iii. STATE-LAW CLAIMS

Defendants Heyns and Sampson are also afforded immunity from Plaintiff's state-law tort claims.

The Michigan Supreme Court has described the reach of absolute immunity as follows:

> We therefore hold that judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their judicial, legislative, or executive authority.

*Ross*, 420 Mich. at 633. Shortly after the *Ross* decision, the Michigan Legislature codified that holding:

> Judges, legislatures, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to property whenever they are acting within the scope of their judicial, legislative, or executive authority.

Mich. Comp. Laws § 691.1407(5).

The Michigan Court of Appeals has expressly held that the Director of the MDOC is considered to be a "highest executive official" and entitled to absolute immunity from tort liability so long as he is acting within his authority. *Chivas v. Koehler*, 182 Mich. App. 467, 471 (1990). Absolute immunity applies even where a plaintiff's claim alleges the commission of an intentional tort. *Armstrong v. Ypsilanti*, 248 Mich. App. 573, 594 (2001). Here, Defendant Heyns is considered a "highest appointive executive official[]" and is entitled to invoke absolute immunity as a defense to all of Plaintiff's tort claims. Although it is unclear from Plaintiff's Complaint what allegations, if any, relate to Defendant Heyns, Plaintiff has certainly not pleaded facts to belie that Defendant Heyns was acting "within the scope of [his] . . . executive authority." Accordingly, the Court dismisses Plaintiff's tort claims against Defendant Heyns.

Defendant Sampson also argues that Plaintiff's tort claims as against her are barred by governmental immunity. Michigan's Governmental Tort Liability Act states generally that employees of state agencies are immune from tort liability while in the course of employment and when "engaged in the exercise or discharge of a government function" under certain conditions. Mich. Comp. Laws § 691.1407(2). The governmental immunity statute includes a savings provision that states that the legislation "does not alter the law of intentional torts as it existed before July 7, 1986." *Id.* at §691.1407(3). That reference was meant to preserve the

rules of governmental immunity for intentional torts set out in *Ross*, *supra*. *See Odum v. Wayne Cnty.*, 482 Mich. 459, 461–62 (2008).[7] Plaintiff's remaining torts[8] are intentional infliction of emotional distress and defamation, both of which are intentional in nature.

In *Ross*, the Michigan Supreme Court outlined three elements state employees must establish to avail themselves of the governmental immunity defense:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial.

*Ross*, 420 Mich. at 479–80.

Again, the allegations from Plaintiff's Complaint leave much to be desired. Parsing Plaintiff's Complaint, the only allegation the Court finds offered against Defendant Sampson was that she "relied [or] used erroneous information" during the parole hearing. Not only does Plaintiff fail to adequately plead how that supposed action causes Defendant Sampson to be liable for intentional infliction of emotional distress or defamation, he also fails to refute Defendant Sampson's argument that, no matter her involvement in the parole hearing, all of her actions were within the scope of her authority, were in good faith, and were discretionary. The Court finds that Defendant Sampson is protected from Plaintiff's tort claims by immunity and dismisses said claims.

The Court will last address Plaintiff's claims as they relate to Defendant County of Monroe.

---

[7] In her argument, Defendant Sampson incorrectly applies the test outlined in the governmental immunity statute. As stated in this Opinion, *Ross* provides the correct framework when analyzing governmental immunity and intentional torts.

[8] *See*, *supra*, note 6.

13

**D. COUNTY OF MONROE**

    **i. SECTION 1983 CLAIMS**

A municipal or governmental entity defendant can be found liable for the violation of a constitutionally protected right only if the plaintiff can establish that an officially executed policy, or the toleration of a custom of such municipality or governmental entity, leads to, causes or results in the deprivation of such rights. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *See also City of Canton v. Harris*, 489 U.S. 378 (1989). Therefore, Plaintiff must not only identify a policy or custom, he must also connect the policy or custom to the County of Monroe and show causation between the particular injury and the execution of that policy or custom. *Garner v. Memphis Police Dept., on remand,* 8 F.3d 358, 364 (6th Cir. 1993). *See also Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000).

*Respondeat superior* is not available as a theory of recovery in a § 1983 action, as "[a] municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). *See also Monell*, 436 U.S. at 690–91. Accordingly, in order to have a viable action against the County of Monroe, Plaintiff must demonstrate that the County itself is the wrongdoer. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).

Though he passingly mentions the County of Monroe in his Complaint, Plaintiff wholly fails to identify any officially executed "policy" or "custom", much less connect such a policy or custom to the County of Monroe and demonstrate causation between his supposed injury and the execution of the County's policy or custom. Thus, Plaintiff's § 1983 claims against the County of Monroe are dismissed.

**ii. STATE-LAW CLAIMS**

Defendant County of Monroe has governmental immunity with respect to Plaintiff's state-law tort claims. Mich. Comp. Laws § 691.1407 provides the following:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

Mich. Comp. Laws § 691.1407(1).

The Michigan Supreme Court has confirmed that, because governmental immunity is a characteristic of government, a "plaintiff must plead [his] case in avoidance of immunity." *Mack v. City of Detroit*, 467 Mich. 186, 203 (2002), *superseded in part on other grounds by Costa v. Cmty. Medical Serv., Inc.*, 475 Mich. 403 (2006). Providing instruction, the Court explained that "[a] plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Id.* at 204. In this case, Plaintiff has "failed to plead [his] case in avoidance of immunity." Plaintiff neither states that his tort claims fit within one of the enumerated exceptions to the governmental immunity statute, nor does he offer any facts to demonstrate that Defendant County of Monroe acted outside the scope of its authority. Common throughout his Complaint, Plaintiff again fails to adequately allege facts that would subject Defendant County of Monroe to tort liability. As such, Plaintiff's state-law tort claims against Defendant County of Monroe are dismissed.

## V. CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Defendants' motions to dismiss [dkts 5 and 16] are GRANTED.

IT IS FURTHERED OREDERED that *all* of Plaintiff's claims against Defendants McCarty, Simms, Nichols, Weipert, Bronson, Labeau, County of Monroe, Heyns, and Sampson are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's Companion Motion [dkt 12] and Motion for Summary Judgment and to Appoint Counsel [dkt 14] are DENIED as moot.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
U.S. District Judge

Dated: March 14, 2013